UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:23-CR-281-SDJ |
| | § | |
| TARIQ FOX (1) | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the United States' Emergency Motion to Stay and Appeal of United States Magistrate Court's Order of Release. (Dkt. #11). The Court previously granted the Government's Motion to Stay. (Dkt. #12). Fox responded in opposition to the Government's motion. (Dkt. #27). The Court, having considered the Government's Motion, Fox's response, the record, and the applicable law, **GRANTS** the Motion and the relief requested.

## I.

Fox and two codefendants are charged with violating 18 U.S.C. §§ 1951 and 2, Hobbs Act Robbery and Aiding and Abetting, as well as 18 U.S.C. §§ 1201(a) and 2, Kidnapping and Aiding and Abetting. (Dkt. #1). These charges stem from Fox's alleged participation in a home-invasion robbery and kidnapping. During the robbery, the victim was bound with zip-ties and duct tape, threatened with violence, and detained for several hours while the defendants stole thousands of dollars and other valuables.

Following his indictment, Fox was arrested in the Northern District of Georgia and appeared before a magistrate judge for a pretrial detention hearing. The

1

magistrate judge denied the Government's motion seeking detention and released Fox on bond conditions. The Government immediately appealed, and this Court stayed the order releasing Fox. Fox has remained in custody and was transferred to the Eastern District of Texas. The Court held a hearing on the matter of pretrial detention, (Dkt. #28), and the Government later submitted a supplement to its motion, (Dkt. #34).

## II.

Under 18 U.S.C. § 3145(a)(1), when a defendant is ordered released by a magistrate judge, the Government may file with the district court a motion for revocation of the release order. The district court reviews the magistrate judge's order de novo and "must make an independent determination of the proper pretrial detention or conditions for release." *United States v. Rueben*, 974 F.2d 580, 585 (5th Cir. 1992). Accordingly, the Court has discretion to "support what the magistrate has actually ordered with additional findings based on its independent consideration of the record before the magistrate and the additional evidence adduced before it." *United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985).

## III.

The Court, having held a pretrial detention hearing and determined that no combination of release conditions can reasonably assure public safety and the appearance of the Defendant, finds that Fox must be detained pending his criminal trial.

**A.**

The Bail Reform Act, 18 U.S.C. § 3142, governs the release and detention of defendants awaiting trial. Generally, a court must release a defendant on bail on the least restrictive condition or combination of conditions that will reasonably assure the defendant's appearance when required and the safety of the community. *See* 18 U.S.C. § 3142(c)(1)(B).

A judicial officer may order a defendant detained pending trial only upon satisfying two prerequisites. First, the officer must hold a hearing pursuant to a circumstance listed in 18 U.S.C. § 3142(f). *United States v. Byrd*, 969 F.2d 106, 109–10 (5th Cir. 1992) (per curiam) ("Detention can be ordered, therefore, only in a case that involves one of the six circumstances listed in (f) . . . .") (internal quotation marks omitted).[1] Second, after a hearing, the officer must determine whether the Government has shown by a "preponderance of the evidence that 'no condition or combination of conditions will reasonably assure the appearance of the person,' or by clear and convincing evidence that 'no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community.'" *United States v. Acosta-Leyva*, 751 F. App'x. 594, 595 (5th Cir. 2019) (quoting 18 U.S.C. § 3142(e)); *see also Rueben*, 974 F.2d at 586 (explaining that, "[f]or pretrial detention to be imposed on a defendant, the lack of reasonable assurance of either the

---

[1] At the time *Byrd* was issued, there were only six circumstances listed in Section 3142(f), subsections 3142(f)(1)(A)–(D) and 3142(f)(2)(A)–(B). Subsequently, in 2006, the Bail Reform Act was amended to include a seventh circumstance, section 3142(f)(1)(E). *See* Adam Walsh Child Protection and Safety Act of 2006, Pub. L. 109-248, § 216, 120 Stat. 617 (2006).

defendant's appearance, or the safety of others or the community, is sufficient; both are not required").

Upon satisfying both prerequisites, a judicial officer may order a criminal defendant detained pending trial. *See United States v. Okhumale*, No. 20-10387, 2020 WL 2517083, at *2 (5th Cir. May 15, 2020) (per curiam) (reaffirming that pretrial detention requires "the presence of one of the circumstances outlined in § 3142(f) *and* a determination under § 3142(e) that [] no conditions imposed could either assure the appearance of the defendant or the safety of the defendant and community") (emphasis in original) (citing *Byrd*, 969 F.2d at 109–10).

## B.

Section 3142(f) provides seven circumstances under which a judicial officer must hold a hearing to determine whether any combination of conditions will reasonably assure the defendant's appearance and the safety of the community. Under Section 3142(f)(1), "upon motion of the attorney for the Government," the judicial officer must hold a hearing in a case involving "a crime of violence." 18 U.S.C. § 3142(f)(1)(A).

The kidnapping and Hobbs Act robbery charges against Fox are "crime[s] of violence" under 18 U.S.C. § 3142(f)(1)(A). *See United States v. Obregon*, 371 F. App'x. 556, 559 (5th Cir. 2010) (affirming that kidnapping is a "crime of violence"); *United States v. Madrid-Paz*, No.22-20397, 2023 WL 7013354, at *2 (5th Cir. Oct. 24, 2023) (affirming that Hobbs Act robbery is a "crime of violence"). The Court's detention hearing was therefore both authorized and required by 18 U.S.C. § 3142(f)(1).

**C.**

Having held a hearing pursuant to Section 3142(f), the Court must next determine whether any combination of conditions can reasonably assure Fox's appearance and the safety of the public. Section 3142(g) sets out the factors a court must consider in making that determination: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the defendant's history and characteristics, including, among other things, his family ties, length of residence in the community, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3141(g); *see also Acosta-Leyva*, 751 F. App'x. at 595.[2]

The Court now considers each of these factors.[3]

**1.**

At the outset, the nature and circumstances of the offenses charged against Fox weigh in favor of detention. Fox has been indicted for his participation in two serious offenses. Count One charges Fox with Hobbs Act robbery and aiding and

---

[2] In some cases, a rebuttable presumption arises that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). The circumstances giving rise to a rebuttable presumption are listed in Section 3142(e)(2)–(3). None applies in this case.

[3] The Court has reviewed the record and the parties' filings, including all the materials and testimony considered by the magistrate court. In addition to written submissions, at the detention hearing the Government presented the testimony of Special Agent Thomas Clements.

abetting, in violation of 18 U.S.C. §§ 1951 and 2, a crime that carries up to twenty-five years in prison. In Count Two, Fox is charged with kidnapping and aiding and abetting, in violation of 18 U.S.C. §§ 1201(a) and 2, a crime that carries a potential life sentence. The severity of Fox's potential sentence, particularly a potential life sentence, provides Fox a strong incentive to flee. *See*, *e.g.*, *United States v. Ellis*, 646 F. App'x 889, 890 (11th Cir. 2016) (affirming the propriety of lower court's determination that a potential life sentence created an incentive to flee); *United States v. Zhang Xiao Dong*, No. 3:17-CR-546-L, 2017 WL 5629513, at *3 (N.D. Tex. Nov. 22, 2017) (concluding that possible prison sentence of forty-six to fifty-seven months presented motive to flee).

The circumstances of the offenses charged also weigh in favor of detention. At the hearing, Special Agent Clements testified to the disturbing and violent circumstances of the crime. According to Special Agent Clements, Fox identified the victim as a successful e-sport personality, learned of the victim's high income, and specifically befriended the victim on these bases. Fox then used his friendship with the victim to gain access to the victim's apartment under the guise of playing video games together. He stayed with the victim for several days before committing the instant offenses.

Once the victim was asleep, Fox allowed his two codefendants, Malik Ogletree and Aaliyah Wright, into the victim's apartment. The codefendants tied Fox up to make it appear that he was also a victim. They then accosted the sleeping victim, removed his pants and dragged him from his bedroom to the living room. There,

6

Ogletree and Wright zip-tied and duct-taped the victim's hands and feet and placed a bag over his face to obscure his view. The victim heard the Defendants discuss getting a firearm. At one point, one of the defendants told him: "Imma' blow your fucking head off!"[4] The victim was detained for roughly four hours while the Defendants used his electronic devices to access his accounts and steal thousands of dollars, as well as approximately $23,000 worth of jewelry and other valuables. The circumstances of these offenses are troubling, as they involved both violence and threats of violence against the victim that occurred over a number of hours.

The Government also presented evidence that Fox is the primary suspect in a similar home invasion robbery and kidnapping that occurred in Austin, Texas just one month earlier. The victim of this offense was a member of the same online gaming community, and Fox identified the victim there in the same manner as he did here. Fox similarly traveled to Texas for the sole purpose of committing the offense.

Accordingly, the nature and circumstances of Fox's charged offenses and related conduct amply demonstrate that his release would present a significant danger to the public and that he faces a lengthy sentence providing a heavy incentive to flee. In addition, Fox's use of interstate travel to commit these offenses demonstrates his potential to travel or flee in the future.

---

[4] As discussed below, a firearm was found in Fox's vehicle parked within walking distance of the victim's apartment. However, Special Agent Clements noted there is no evidence a firearm was present at the victim's apartment during the offenses.

**2.**

The Court must also consider the weight of the evidence against Fox, although this factor is considered "to be of least importance in the detention determination." *United States v. Stanford*, 630 F.Supp.2d 751, 755 (S.D. Tex. 2009) (citing *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986); *United States v. Barnett*, 986 F.Supp. 385, 393 (W.D. La. 1997)).

The Government produced significant evidence against Fox. Arguably most important are Fox's admissions at the time of his arrest in the victim's apartment. Special Agent Clements testified that Fox admitted in a Mirandized interview with the Frisco Police Department that (1) he was planning to get money from these offenses in order to pay his bills, (2) he planned, with his codefendants, to be tied up along with the victim to give the appearance of his lack of involvement, (3) he traveled to Frisco for the purpose of committing these offenses, (4) the whole scheme was his idea, and (5) he did not feel regret during the commission of the offenses but did in the aftermath.

Beyond Fox's admissions, there is additional evidence tying him to the crimes charged. Cash App records show payments, both in United States currency and Bitcoin, from the victim to an account controlled by Fox. Similarly, Cash App payments from the victim's accounts were made to accounts controlled by codefendant Ogletree. Fox's vehicle, located within walking distance of the victim's apartment, contained zip ties (like those used during the commission of the offenses), Delta airline boarding passes for dates and locations not associated with this incident but

bearing the name of codefendant Ogletree, and a Smith and Weston 9-millimeter handgun.

The Government also produced evidence that codefendants Ogletree and Wright stayed at a hotel in The Colony, Texas the night of the offenses. Defendant Wright's iCloud had a photograph of a person face down in the hotel room with zip-ties and duct tape on his hands and feet. The photograph was taken the day before the present offenses, suggesting that Ogletree and Wright were preparing their method for restraining the victim. The brand of duct tape in Wright's photograph was the same brand used on the victim. Special Agent Clements testified that an officer confirmed the photograph was taken in the same hotel that Ogletree and Wright stayed in.

The weight of evidence against Fox weighs in favor of detention.

### 3.

Fox's history and characteristics also weigh against pretrial release. Relevant history and characteristics include "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A).

At the hearing, Fox indicated that he had a strong relationship with his mother, his mother's long-term boyfriend, grandmother, and school-aged sister, all of

whom live in Atlanta, Georgia. Fox has lived with his mother since mid-2023 and has largely lived in Atlanta since 2004.

Fox served briefly in the United States Army. But Fox's service in the Army ended when he was discharged for drinking alcohol on base. Fox also has a prior criminal history. In 2018, he served a three-year sentence for credit card fraud.

At the age of 24, Fox's employment history is extremely limited, as Fox only lists his role as an Uber driver starting in June of 2023 on his bond report. In that report, Fox indicates that his monthly expenses are more than his monthly income. His mother testified that Fox has struggled with a gambling addiction for years. Because Fox relied on these offenses for income, paired with his limited employment history and apparent desperate financial situation, he would likely continue to commit criminal offenses if released.

Fox's mother gave testimony before the magistrate judge and indicated that she would be willing to serve as a third-party conservator should Fox be released. The Court notes, however, that Fox was living with his mother during the time he had a gambling addiction and when he appears to have committed the instant offenses. The Court is concerned that Fox's mother would not be able to effectively act as a conservator for Defendant, and Fox has suggested no other person who could take on

this responsibility. In this regard, the Court also notes that the most recent pretrial services evaluation recommends that Fox be detained.

Fox's history and circumstances, considered in totality, counsel in favor of detention.

**4.**

Lastly, the Court must consider the nature and seriousness of the danger to any person or the community that would be posed by Fox's release. As established above, the Government has provided information showing that Fox orchestrated and conducted a carefully planned, violent kidnapping and robbery. He is the lead suspect in a similar case. Fox's displayed pattern of violent kidnapping and willingness to travel interstate to conduct such crimes, potentially with the aid of a firearm, suggests that he presents a danger to others as well as the community.

The Court recognizes that Fox returned to Texas in December 2023 to attend a judicial hearing (that was not held due to agreement between the parties) in Denton regarding his vehicle. The Court also notes that Fox was on bond for three months on state charges for the same incident prior to his federal arrest in December 2023. During that time, Special Agent Clements noted that he was not aware that Fox committed any other crimes.

On the other hand, however, approximately two weeks after this Court held his detention hearing, Defendant Fox assaulted a guard at the Fannin County Detention Center. According to the Government's supplemental filing, which is premised on records from the Detention Center, Fox had a physical altercation with

a corrections officer during the service of breakfast at the Detention Center. *See* (Dkt. #34 at 1). Fox's violent act against a law enforcement officer shows that he continues to present a danger to the community.

\* \* \* \*

The Court finds that, having reviewed the 3142(g) factors, the Government has proven by clear and convincing evidence that no combination of conditions could reasonably assure the safety of the public pending trial. The Government has also demonstrated, by a preponderance of the evidence, that no combination of conditions can reasonably assure Fox's appearance for any pretrial proceedings and trial. For these reasons, Fox must remain detained pending trial.

## IV.

For the foregoing reasons, it is **ORDERED** that the United States' Appeal of United States Magistrate Court's Order of Release, (Dkt. #11), is **GRANTED**. The magistrate judge's order of release is **REVOKED.** Fox shall remain in custody pending trial.

**So ORDERED and SIGNED this 28th day of May, 2024.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE